Post *v.* Stiger.

---

PETER K. POST

*v.*

JACOB M. STIGER and ELIZABETH W. STIGER.

1. A debt claimed by a wife against her husband, and first put in writing when his debts begin to jeopardize his future, must always be regarded with suspicion, and when attempted to be enforced against his creditors, must be rejected unless proved very clearly.

2. A contingent liability, which afterwards becomes absolute, is sufficient to constitute the relation of creditor and debtor from the time it is incurred.

3. After breach of a covenant of seizin, the covenantee is a creditor of the covenantor within the meaning of the statute of 13 *Eliz.*, ch. 5.

4. If the grantee of property conveyed in fraud of creditors disposes of it before proceedings are instituted to reach it, he will be held answerable for its value.

---

On final hearing on bill, answer and proofs.

*Mr. E. M. Shreve,* for complainant.

*Mr. G. P. Suydam* and *Mr. J. H. Jackson,* for defendants.

THE VICE-CHANCELLOR.

This is a suit by a judgment creditor, to bring within the grasp of his judgment property alleged to have been conveyed in fraud of creditors. The defendants are husband and wife.

Post *v.* Stiger.

On the 12th day of October, 1871, the complainant con-
veyed to the defendant, Jacob M. Stiger, a farm in Somerset
county, and Mr. Stiger, in part payment, conveyed to the
complainant six hundred and forty acres of land, situate in
Stone county, Missouri, by a deed containing a covenant
that he was seized of an indefeasible estate of inheritance
in the lands conveyed. For a breach of this covenant, the
complainant recovered a judgment against Mr. Stiger, in the
circuit court of the United States, on the 12th of April,
1875, for $4,406.59. Mr. Stiger held title to the farm until
October 7th, 1872, when he conveyed it to George H. Wil-
son, who retained the title until June 16th, 1873, and then
conveyed it to Mrs. Stiger. The defendants say the purpose
of the conveyance to Wilson was to transfer the title to Mrs.
Stiger.

The deed to Wilson was executed by both defendants, and
purports to have been founded on a consideration of $25,000.
The answer says its real consideration was a debt due
from Mr. Stiger to Mrs. Stiger, for money and property
belonging to her, which he had used to purchase a part of
the property he conveyed to the complainant, and other
property, the title to which he had taken in his own name.
But we are not informed why Mrs. Stiger joined in the exe-
cution of the deed to Wilson, nor why the title was per-
mitted to stand in his name for over eight months. If the
object of changing the title was simply to pay Mrs. Stiger,
it seems hardly credible that a break in the arrangement
would have been allowed to occur at a point where both she
and her debtor stood stripped, by their own act, of all evi-
dence of legal title, or, if such an occurrence was possible,
that she would voluntarily remain in a condition of such
great insecurity for so long an interval. An action for false
imprisonment was brought against Mr. Stiger the latter
part of the same month in which he conveyed to Wilson,
which, after a second trial, resulted in a judgment against
him for $3,500. The complainant's claim to relief rests
upon two propositions: First, that the conveyance to Mrs.

Stiger was voluntary; and, second, that, inasmuch' as the covenant of seizin was broken as soon as made, he became Mr. Stiger's creditor from its date.

Was the deed voluntary? Wilson paid nothing. The fact that he was permitted to hold the title so long under a deed representing that he had paid a consideration of $25,000, in the absence of any explanation of the delay, would seem to indicate that the original purpose was to hold him out to the world as the actual owner, and not to give the title to Mrs. Stiger in payment of a debt. To say the least of it, the transaction was quite unusual; it is not readily believed, and wears somewhat the appearance of a stratagem. But, was the deed bottomed on the debt due from the husband to the wife, which both treated from its contraction to the date of the deed as a just obligation of the debtor and the right of the creditor, and which the husband always intended to pay and the wife to demand, and not a mere pretence of claim, arising from the appropriation of property or money of the wife by the husband, with her consent, without expectation of payment by her, and without intention, on his part, of incurring an obligation, but which had just sufficient substance to relieve her from a painful consciousness of perjury in attempting to sustain it by an oath? A claim by a wife against a husband, first put in writing when his liabilities begin to jeopardize his future, should always be regarded with watchful suspicion, and, when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected at once, unless their statements are so full and convincing as to make the fairness and justice of the claim manifest. Any other course will encourage fraud, and greatly multiply the hazards of business,

The evidence in proof of the debt in this case is extremely unsatisfactory. It comes almost entirely from the mouth of the debtor. The wife is profoundly ignorant of its amount, and the husband, if he knew, has withheld his knowledge. She says she trusted everything to her hus-

Post *v.* Stiger.

band, and she seems neither to have known nor cared what he did. The story is, that, under his astute management, an investment of less than $1,000, made in 1862, notwithstanding the hazard attending repeated changes, has so wonderfully increased that it is now represented by lands and mortgages aggregating a value of over $20,000. His control over her property has been absolute. While she has been the owner in name, he has been so in fact, so far as ownership can be indicated by dominion and use. While thus managing and enlarging her estate, it is said, the debt in question was incurred. As already stated, its amount is not given. The answer says he was "largely indebted" to her. She, in stating why the farm was conveyed to her, says: "My husband had used some money of mine, and he thought that, possibly, after we got on the farm, and all fixed up, we might make a home there; we have never stayed long in any one place; he had used some money of mine that had come from the sale of lots; I could not tell how much; I will have to refer to him." And he, in testifying upon the same point, says: "I deeded the farm to my wife because I owed her money for lots exchanged for other properties, the title to which I took in my own name, and also for money belonging to her which I had used for my individual purposes; I had taken title to these properties in my own name, without the knowledge of my wife, when they should have been in her name." This is, substantially, the whole of the evidence in support of the debt. It fails to prove it. It is so general and indefinite as to create suspicions. *Dolosus versatur in generalibus.* But, conceding every word of it to be true, Who can say what the debt was? Whether the deed was intended to pay $100 or $10,000, the evidence furnishes no hint. It proves absolutely nothing. But I think it is painfully obvious that the thing now called a debt is a pure invention, having no foundation in truth.

What are the facts? For more than ten years this husband has bought, sold and exchanged lands in the name of

his wife; his judgment has determined what contracts should be made and what should not; she has exercised neither will nor choice; he has received everything, held everything, and paid out whatever has been paid; he has kept no accounts, rendered none, and never regarded himself as accountable; under his adroit management, his wife's few hundred dollars have grown to many thousands—she is rich and he is insolvent; and yet the claim is, that, upon a fair adjustment of his dealings with her estate, he was found largely indebted to her, sufficient to absorb his whole property. The evidence will not warrant such a declaration by this court. The deed to Mrs. Stiger was without consideration as against creditors, and must therefore be adjudged void.

Has the complainant a right to impeach the validity of this deed? The covenant on which his judgment is founded was made on October 12th, 1871. Its breach was coeval with its existence; and the complainant's right accrued as soon as the covenant was made. *Chapman* v. *Holmes*, 5 *Hal.* 20. His damages were certain and fixed, being limited inflexibly to the consideration paid and interest. *Stewart* v. *Drake*, 4 *Hal.* 139; *Holmes* v. *Sinnickson*, 3 *Gr.* 313; *Morris* v. *Rowan*, 2 *Harr.* 305.

An accommodation endorser is a debtor from the time of his endorsement, and, though his liability at the outset is only contingent, if it afterwards becomes absolute, he is esteemed a debtor from its date, and a subsequent voluntary conveyance by him will be adjudged fraudulent. *Cook* v. *Johnson*, 1 *Beas.* 51; *Phelps* v. *Morrison*, 9 *C. E. Gr.* 198; *S. C. on appeal*, 10 *C. E. Gr.* 538.

A contingent debt, likely to become absolute, and which afterwards does become absolute, is, both on principle and precedent, enough to furnish a motive to make a fraudulent conveyance to hinder or avoid its eventual payment. *McLaughlin* v. *Bank of Potomac*, 7 *How.* 228.

A right to damages arising from a tort is within the protection of the statute of 13 *Eliz.*, ch. 5, (*Rev.* p. 446,

Post *v.* Stiger.

§ 12,) and a conveyance made to defeat such right will be set aside. *Scott* v. *Hartman*, 11 *C. E. Gr.* 90; *Jackson* v. *Myers*, 18 *Johns.* 425; *Clapp* v. *Leatherbee*, 18 *Pick.* 138; *Fox* v. *Hills*, 1 *Conn.* 295.

In *Jackson* v. *Seward*, 5 *Cow.* 72, it was held that a covenant guaranteeing that a judgment was collectible, constituted the covenantee a creditor of the covenantor from its date; but this view was repudiated in the court of errors by the only judge who discussed the question. He said, a covenant which simply gives a right of action in the future, in case it is not performed, does not constitute the covenantee a creditor of the covenantor from its date, and that the relation of creditor and debtor cannot exist while the covenant is unbroken. *Seward* v. *Jackson*, 8 *Cow.* 437. In a subsequent case, (*Van Wyck* v. *Seward*, 18 *Wend.* 384,) Judge Bronson, in defining the rights of the parties growing out of the same covenant, said: " The contract of a surety only creates a contingent liability. Until the principal is in default, it is uncertain whether an action will ever accrue against the surety. The drawer of a bill of exchange is only bound to pay it upon a contingency which may never happen; and so it is with the endorser of negotiable paper of all kinds. The contract of indemnity is another case where an action may never accrue upon the undertaking. In these and all other cases depending upon contract, the person to whom the engagement is made is as much a creditor within the meaning of the statute, as though he had a debt on which a right of action already existed. There is no reason why he should not be entitled to the same protection in the one case as in the other. In the language of Chief Justice Mellen, in *How* v. *Ward*, 4 *Greenl.* 195, although he cannot maintain an action on the contract until it has been violated, still he has an interest in the property as a fund out of which his debt ought to be paid."

The rule deducible from the cases, as stated by the editors of *American Leading Cases*, is to this effect: That any one liable upon a contract, expressed or implied, though only

contingently, is a debtor from the time that the liability is entered into. 1 *Am. Lead. Cas.* 42. In Alabama, a covenant of seizin has been held to create the relation of creditor and debtor between the parties from its date. *Gannard* v. *Eslava*, 20 *Ala.* 732.

The statute must be liberally construed. It is intended to discourage fraud and promote honesty. The court must so apply it as to give effect to its fundamental purpose. At the time the defendant attempted to place this farm beyond the reach of those who could maintain actions against him, he stood liable to the complainant upon his solemn covenant; the amount for which he was liable was fixed, by rule of law, with as much certainty as if it had been expressed in the covenant, and the complainant's right of action was as perfect as it would have been had it rested on a promise to pay a sum certain. The liability was absolute, the sum recoverable certain, and the right of action perfect. To say that the holder of such a claim is not a creditor, but has merely a right to an uncertain compensation for an injury, and is not, therefore, entitled to the benefit of the statute, would be a distinction quite too nice for a rule of justice, especially in a case of fraud.

Although Mrs. Stiger now has the title to the farm in controversy, she does not hold it under the right she acquired from her husband. After she obtained title, she conveyed it to James M. Thompson, and he subsequently reconveyed it to her. In the absence of proof to the contrary, he must be considered to be a purchaser in good faith for value. Her title now stands intrenched in the virtue which his purchase communicated to it, and is, therefore, unassailable. But this does not impair the complainant's remedy; it simply renders it necessary to administer relief by another method.

The farm, at the time it was conveyed to Mrs. Stiger, was worth $22,000; Mr. Stiger says he was offered that sum for it; it was subject to a mortgage of $12,500, so that the value of the interest acquired by Mrs. Stiger was $9,500.

That sum, then, represents the value of the property conveyed to her by her husband in fraud of his creditors. Having disposed of the property, she must answer for its value. An attempt has been made to show that she subsequently lost, by bad bargains, all she acquired by the conveyance. The proof does not sustain that view; and, even if it did, it would not relieve her from liability. She held the property as trustee of her husband's creditors, and dealt with it at her peril. A fraudulent grantee cannot repel the claims of the creditors of the grantor, by simply saying, "I have lost, by imprudent bargains or collusive foreclosures, the property I attempted to conceal, and, therefore, I am answerable for nothing."

A decree will be advised directing the defendants to pay the complainant's debt and the costs of this suit, within twenty days after service of a copy of the decree, and, in default of such payment, that an execution shall issue.