153 So. 654

MONTGOMERY, Superintendent of Banks, v. HAMMOND et al.

7 Div. 213.

Supreme Court of Alabama.

March 8, 1934.

Rehearing Denied April 5, 1934.

Walter S. Smith, of Birmingham (Riddle & Riddle, of Talladega, of counsel), for appellant.

Pruet & Glass, of Ashland, for appellees.

BOULDIN, Justice.

The bill was filed by a judgment creditor to subject real estate alleged to have been fraudulently conveyed by the debtor.

The trial court, upon consideration of the evidence, taken in part orally before him, held complainant not entitled to relief, and dismissed the bill.

T. G. Hammond, owner of 440 acres of farm and wooded lands, had five sons. He became indebted for money borrowed from the Farmers' & Merchants' Bank of Goodwater to set up his youngest son in a mercantile business. Notes given December, 1914, maturing December, 1915, were not paid, and judgment was recovered thereon for more than $4,000 in June, 1916. A certificate of the judgment was duly registered in the office of the judge of probate. On November 17, 1915, a few weeks before the debt was due, the debtor executed four deeds, one to each of his four older sons, three of them conveying 80 acres each, and the fourth 40 acres, reducing his remaining lands, his homestead, to 160 acres, not exceeding $2,000 in value.

The deeds recited a consideration of $640 for each of the 80-acre tracts, and $320 consideration for the 40-acre tract, cash in hand paid, etc.

The bill charges the several recited considerations were never paid by the grantees nor either of them; that the transaction was a fraudulent one for the purpose of shielding the property from complainant's demand.

Without question, treating the bill as charging voluntary conveyances, upon proof of the pre-existing debt, a prima facie case for complainant was made out.

The burden was on the several grantees to show a valuable consideration paid for their respective lands.

A careful consideration of the evidence supports the finding of the trial judge on this vital issue in the case.

It is not questioned that the recited consideration for the several conveyances was the fair value of the property.

Only a summary of the evidence on the question of payment vel non need be stated.

The evidence indicates the father conceived the idea of dividing up his lands among his sons, other than the one with whom he was indebted, some time prior to making the deeds. Indeed, it appears one son had built him a home on one parcel many years before, with a view to acquiring title by purchase or gift.

Several months or a year before the deeds were made, the evidence is the father advised these sons that he needed some money, wanted to cut down the farm to be looked after in his old age, and requested them severally to buy a parcel, and was promised they would do so the coming fall or as soon as they could get the money. It appears by the weight of evidence that three of these sons then lived in another county, Talladega. The father, on November 17, 1915, had all the deeds drawn in the absence of the grantees, and proceeded to call upon the sons and deliver them severally.

J. A. Hammond, one of the sons in Talladega county, produces a check, $640, drawn by him on the Merchants' & Planters' Bank, Sylacauga, payable to T. G. Hammond, the grantor, dated November 22, 1915, and duly indorsed and paid by the bank on the same day.

Likewise, J. W. P. Hammond, grantee of the 40-acre tract, produces a check, $320, drawn by him on the Sylacauga bank, payable to the grantor, dated November 23, 1915, and duly indorsed and paid by the bank on the same date.

No substantial evidence appears to warrant any conclusion other than actual payment for these lands out of moneys of the drawers on deposit in the bank.

As to payment by the other two grantees, proof rests mainly on parol evidence, but positive in character, and we cannot say really impeached.

In studying this testimony we must take note of the long delays tending to failure of memory as to details.

This bill was filed, May 2, 1917, and proof was taken in 1931 and 1932, sixteen and seventeen years after the transactions involved.

The grantor, T. G. Hammond, 76 years of age, died six weeks after the bill was filed.

In 1918 or 1919 the complainant bank failed and was taken in hand by the state banking department.

We do not seek to place the blame, nor to reflect upon any individual formerly or presently connected with the case, but, for future good, we feel constrained to say such unseemly delays involving trust assets being administered by the state are a reproach to the administration of justice. The case did not reach this court until January, 1934.

Reviewing some phases of the evidence depending on the memory of witnesses after so great lapse of time, no great stress is to be given to inaccuracies and contradictory accounts as to details.

The testimony of F. B. Hammond is in point. He and his wife are both positive as to actual payment for the land, but he is not so clear as to how and when he got the money, made payment, and received the deed. It is significant that he borrowed $408 and gave a mortgage on the land to a bank in January, 1916, contemporaneous with the recording of the deed, which he says was immediately after it was delivered. It seems quite probable, as intimated by counsel in the course of the trial, that the delivery of his deed was delayed until that date for him to get the needed amount of money. This was before any suit was brought against the grantor, and no evidence shows any knowledge at that time which would connect him with any fraud, if such there was, on the part of his father.

W. L. Hammond, the son who had built several years before, also depends on parol evidence for proof of payment.

We see no reason to find the father made any difference between the four sons. That he sold to some and gave to others is improbable.

■ It remains to consider whether the grantees had notice of and participated in any fraudulent intent on the part of the father, if such there was.

All the respondents deny any knowledge that their father had involved himself in debt in aid of the fifth brother.

In this connection the evidence is in dispute as to when the original debt was incurred.

A witness connected with the bank gives no date, but an impression that it dated back several years before 1915.

The bank records are not produced, nor their absence accounted for, nor is it denied that the entire history of the loan would be thus disclosed.

We think the weight of the evidence is that the father did not become involved until 1913 or 1914, when the older boys were living in other neighborhoods.

Nor would it follow that sons should suspect their father of a fraudulent purpose in selling his lands to get needed money, without more.

Certainly, it is perfectly legitimate for a debtor to sell property to get money to pay his debts. What the father did with this money no evidence discloses.

The rules of law governing such cases, so often declared, need no repetition here. Giving due weight to the circumstances disclosed on behalf of complainant, including the fact of transactions between near relatives and the resulting reduction of the grantor to a position of insolvency, we see no good reason, upon a consideration of the entire record, to hold the trial judge clearly wrong in his finding.

■ The bill seeks to further subject the homestead remaining in the grantor. He left no minor children, but left a widow. She later married again and removed from the lands to live with her second husband. Later she caused the lands to be set apart by proceedings in the probate court, all regular on their face, to vest a complete title against the heirs.

Being less in area and value than the homestead exemption, they were not subject to debts, and no judgment lien attached thereto during the life of the judgment debtor.

The theory of complaint seems to be that no one can have two homesteads; that, by removing from this land to the homestead of her second husband, she abandoned this homestead, and it became a part of the estate of the first husband for the payment of debts.

Under the present statute, the same in force at the date of the husband's death, this homestead being less in area and value than

the exemption, vested in the widow in fee as against creditors. Code, § 7920.

Section 7952 has no application to such case. The fee being in the widow, no abandonment nor acquisition of other homestead rights could divest her title. Johns v. Cannon, 199 Ala. 138, 74 So. 42; Tartt v. Negus, 127 Ala. 301, 28 So. 713; Gist v. Lucas, 122 Ala. 557, 25 So. 41.

Were it otherwise, a judicial decree by the probate court in proceedings disclosing all the jurisdictional facts could not be collaterally assailed, but must be set aside by direct proceeding in equity for fraud in its procurement. Keenum v. Dodson, 212 Ala. 146, 102 So. 230.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.