### The UNITED STATES SHOE CORPORATION, Plaintiff,

v.

### Edward E. BEARD, Beard Construction Company, Inc., Wilcox County Bank and Federal Deposit Insurance Corporation, Defendants.

#### Civ. A. No. 78–189–H.

United States District Court, S. D. Alabama, S. D.

Jan. 18, 1979.

Louis E. Braswell, and Caine O'Rear, III, Mobile, Ala., Herschel L. Haag, III, New Orleans, La., for plaintiff.

Edward E. Beard, pro se and for Beard Const. Company, Inc.

Ralph N. Hobbs, Selma, Ala., for Wilcox County Bank & FDIC.

HAND, District Judge.

This action was initiated by a complaint filed on behalf of the plaintiff alleging that a real property conveyance by defendant Beard to defendant Beard Construction Company, Inc. was fraudulent in that it was made with the intent to hinder or defraud creditors, and requesting that the conveyance be set aside along with the subsequent mortgage of the property to the Wilcox County Bank, and that the property be ordered sold by the Court to satisfy the claim of the plaintiff against defendant Beard.

The matter came on for trial before the Court on December 14, 1978 and the Court, having considered the record, the testimony and exhibits offered at trial, and the memoranda of law and arguments propounded by counsel for all parties, together with the applicable law, finds as follows:

## FINDINGS OF FACT

1. The plaintiff is a corporation incorporated under the laws of the State of Ohio and has its principal place of business in the State of Ohio. Defendant Edward E. Beard is a resident citizen of the State of Alabama. Defendant Beard Construction Company, Inc., is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in the State of Alabama. Defendant Wilcox County Bank was at all times relevant to the events leading up to the institution of this lawsuit a state banking association organized under the laws of the State of Alabama with its principal place of business in Alabama. Defendant Federal Deposit Insurance Corporation (FDIC) is a corporation created under the laws of the United States and is joined in this action apparently both in its capacity as receiver of the defendant Wilcox County Bank, and as purchaser of the assets of the defendant Wilcox County Bank.

2. Defendant Beard became indebted to the plaintiff in 1976 or at some time prior thereto, and the debt ripened into a judgment in the plaintiff's favor for $37,235.02 in the case of *United States Shoe Corporation v. Beard*, Civil Action 77–322–P (S.D. Ala. October 28, 1977). An appropriate certificate of judgment was properly filed in the Baldwin County Probate Court on November 18, 1977, and the judgment has to this date remained unsatisfied.

3. Prior to this judgment, in the spring of 1977, defendant Beard was in the process of attempting to refinance a mortgage on real property owned by him held by the Baldwin County Savings and Loan Association. When Beard subsequently approached this bank concerning a construction loan, he was turned down. He next sought a loan through the Eastern Shore National Bank, which was also unable to service such a loan due to the large amounts of money involved, but Rick Weinacker, who was with Eastern Shore National Bank at that time, helped Beard get financing through the defendant Wilcox County Bank.

4. During the negotiations for the loan, Ed Gregory of the defendant Bank told Weinacker that the defendant Bank was not interested in a second mortgage, but that his Bank would consider an all-encompassing first mortgage that would allow the pre-existing mortgage to be paid out. Weinacker testified further that Gregory inquired of him whether the loan was to be made in the name of the individual mortgagor or a corporate mortgagor, but Weinacker could not recall whether a corporate mortgagor was insisted upon or merely preferred. Other testimony by defendant Beard's attorney supported the inference that the defendant Bank desired to lend to a corporation, but there is absolutely no evidence that incorporation was a precondition to the loan. The Court finds from the evidence, however, that the defendant Bank's stance instigated the creation of the defendant corporation.

5. On March 4, 1977 defendant Beard Construction Company, Inc., was incorporated. Beard was and is the president of this corporation, and he has owned 998 or 999 of the 1000 shares of stock in the corporation since its incorporation. According to the Articles of Incorporation for the defendant corporation (Plaintiff's Exhibit 6), the shares were in return for cash at the rate of $1.00 per share.

6. By a deed filed for record on March 29, 1977 defendant Beard conveyed the real property in question to the defendant corporation in consideration of payment of $10.00 by the corporation (Plaintiff's Exhibit 1). The evidence is clear that the transfer of the property to the corporation resulted from the defendant Bank's desire to have a corporate mortgagor, and there is no question but that at the time of the transaction defendant Beard expected the property to be mortgaged by the corporation and that the proceeds of the mortgage would be utilized to pay up on Beard's individual short-term obligations to the Eastern Shore National Bank and his mortgage obligations to Baldwin County Savings & Loan.

7. On March 31, 1977, subsequent to the conveyance of property to the corporation, the corporation executed a mortgage and security agreement to defendant Bank as security for a loan of $215,000.00 from the Bank to the corporation. The mortgage and security agreement was filed for record on April 1, 1977 (Plaintiff's Exhibit 2). Prior to the execution of this mortgage the defendant Bank was not a creditor of either Beard or the corporation.

8. On March 1, 1978, the Alabama State Superintendent of Banks assumed exclusive custody and control of the business affairs of the defendant Bank. On March 2, 1978, by order of the Wilcox County Circuit Court, defendant FDIC was designated as Receiver for the defendant Bank. On March 7, 1978, defendant FDIC as Receiver, for a valuable consideration and without any notice of any allegations of fraud concerning prior conveyances and with the approval of the Wilcox County Circuit Court, sold to defendant FDIC, in its corporate capacity, the Receiver's interest in and to

certain property, which included the mortgage and security agreement at issue in this lawsuit.

9. The plaintiff argues that the foregoing state of facts indicates a fraudulent conveyance worthy of being set aside by this Court, contending that the conveyance from Beard to the corporation was made without consideration and that the conveyance was made with the intent to hinder, delay, or defraud creditors. The defendants contend that the conveyance was supported by good and valuable consideration, that there was no intent on the part of defendant Beard to hinder, delay, or defraud his creditors, and that even if those allegations be true defendant FDIC as purchaser without notice of the purportedly fraudulent conveyance cannot now have its interest or title in the property impaired.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this lawsuit and the parties hereto under the Court's traditional diversity jurisdiction, Title 28, U.S.C.A. § 1332, and the Court concludes that since all of the events giving rise to this litigation occurred in the State of Alabama, the law of the State of Alabama is controlling with respect to the substantive rights of the parties. *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.,* 570 F.2d 1220 (5th Cir. 1978); *Bendix Home Systems, Inc. v. Hurston Enterprises, Inc.,* 566 F.2d 1039 (5th Cir. 1978).

2. This is a fraudulent conveyance suit brought by a creditor. Under Alabama law, [a]ll conveyances . . . of any estate or interest in real or personal property and every charge upon the same made with intent to hinder, delay or defraud creditors . . . of their lawful actions, damages, forfeitures, debts or demands . . . are void." *Ala.Code* § 8–9–6 (1975). The Supreme Court of Alabama has stated "that the concurrence of three elements is essential in the constitution of a fraudulent conveyance; that is to say, before a conveyance can be declared fraudulent it must be made to appear that there is (1) a creditor to be defrauded; (2) a debtor intending to defraud; and (3) a conveyance of property out of which the creditor could have realized his claim, or some portion thereof." *Adkins v. Bynum,* 109 Ala. 281, 19 So. 400 (1896). This statement of the law is still controlling in Alabama fraudulent conveyance actions. *See Roddam v. Martin,* 285 Ala. 619, 235 So.2d 654 (1970).

3. There is no question but that under the *Adkins* test, *supra,* the plaintiff herein amounts to a "creditor to be defrauded," since the plaintiff at the institution of this lawsuit had a right by law to demand the fulfillment of an obligation. *Galloway v. Shaddix,* 197 Ala. 273, 72 So. 617 (1916); *Gannard v. Eslava,* 20 Ala. 732 (1852).

4. The intent test is not so easily resolved. There is no question but that defendant Beard, in setting up the defendant corporation and subsequently mortgaging the property on behalf of the corporation, intended to provide the defendant Bank with a debt-free entity in the form of a corporate mortgagor. But can such a clear intent in itself be construed to establish an intent to hinder, delay, or defraud creditors?

Various Alabama decisions have held that the formation of a corporation by a debtor and the conveyance of his property to that corporation may be a device for hindering, delaying, or defrauding creditors. *E. g., Harris v. First National Bank of Tuscumbia,* 227 Ala. 86, 149 So. 86 (1933); *Metcalf v. Arnold,* 132 Ala. 74, 32 So. 763 (1902). Had the evidence in the matter *sub judice* revealed, as in *Harris* and *Metcalf,* that the corporation was formed for no reason other than to hold the debtor's property and insulate it from creditors, then the Court would have no reluctance in finding the requisite intent. But here the evidence is clear that defendant Beard created a viable corporation with the purpose of engaging in the construction industry, which Beard was already engaged in individually. Additionally, the evidence indicates that the formation of the corporation resulted from the defendant Bank's desire to have a debt-free corporate mortgagor, and the Court rejects

the plaintiff's attempt to transpose a desire on the part of the Bank into a fraudulent intent on the part of defendant Beard.

In *Virginia Carolina Chemical Corporation v. Satsuma Orange & Pecan Groves Company*, 227 Ala. 55, 148 So. 853 (1933), the Alabama Supreme Court stated that "where a conveyance is made under such circumstances that the result must necessarily be to hinder and delay existing creditors, it will be presumed that such was the intent of the grantor in making it." *Id.* at 855, *citing, e. g., Crawford v. Kirksey*, 55 Ala. 282 (1877); *Reynolds v. Welch*, 47 Ala. 200 (1872). The plaintiff contends that intent to defraud is also demonstrated in the instant case under the *Satsuma* language, but the Court cannot agree. As the Court views the facts, the property in question was mortgaged for a loan of $215,000.00, and $90,103.75 of those proceeds was applied to repayment of a prior mortgage upon which Beard was individually liable, leaving the corporation with cash assets of $124,896.25. From this amount payments of $33,434.83 and $90,449.74 were made to the Eastern Shore National Bank on short-term obligations of defendant Beard. Of the $1011.68 remaining, $331.50 was paid to the Judge of Probate of Baldwin County for a recording fee, and $176.12 was spent for a Title Insurance Policy, leaving $504.06 in the hands of the corporation. The Court cannot find as a matter of law that the necessary result of this transaction was to hinder or delay existing creditors. The debtor merely took a real property asset and, through a corporate mortgage, was able to pay off $214,000.00 worth of existing debts. It was unfortunate that the plaintiff was not among the creditors receiving a share of the proceeds from the mortgage, but the Court does not view the debtor's election to pay off certain debts and not pay off others as any intent to defraud, hinder, or delay. Evidence elicited by the defendants indicated an appraisal value of $310,000.00 for the property. Reduced by the mortgage, there should be equity of close to $100,000.00 in the defendant corporation. The corporation having on earlier occasions answered for Beard's individual debts could certainly by law be required to do so again. Or creditors could levy upon Beard's 998 shares of corporate stock, since the apparent equity in the corporation greatly exceeds the amount of the plaintiff's judgment. The plaintiff contends that such a result would hinder its position as a creditor since corporate stock is more difficult to levy upon than real property. This may well be true, but the Court knows of no law requiring a debtor to keep his property frozen in one form of a tangible asset to facilitate levy by creditors. As long as the debtor does not conceal or destroy assets, the Court is of the opinion that the fact that his conduct imposes greater impediments upon the creditors' ability to reach those assets does not amount to an intent to defraud, delay, or hinder such creditors. Additionally, the Court views the fact that defendant Beard was not insolvent at the time of the transaction or after the transaction as negating any presumption that the transfer was made with the intent to delay, defraud, or hinder such creditors. On this basis, the Court cannot conclude that the necessary consequence of the conveyance was to hinder, delay, or defraud his creditors. Nor can it be said that such actions concealed assets of the debtor, since all of the events herein are matters of public record. *Cf. American Trust & Savings Bank v. O'Barr*, 12 Ala.App. 546, 67 So. 794 (1914).

The Court having concluded that the plaintiff has failed to establish fraudulent intent under the "necessary consequence" theory, must still consider whether there was valuable consideration for the conveyance, since a deed without valuable consideration is void as to creditors, regardless of the intent of the debtor-transferor. *Crovo v. Aetna Casualty & Surety Company*, 336 So.2d 1083 (Ala.1976). And, the propriety of the consideration having been attacked by a creditor, the burden is on the grantee to establish that the consideration was bona fide. *Montgomery v. Hammond*, 228 Ala. 449, 153 So. 654 (1934); *Murphy v. Pipkin*, 191 Ala. 111, 67 So. 675 (1914). The Court is of the opinion that bona fide con-

sideration flowed from the corporation to Beard, however, for the evidence before the Court clearly establishes that the proceeds from the mortgage of the conveyed property were to be utilized to pay off an individual debt of Beard. This was the understanding at the time that the property was conveyed and the Court is convinced that there was therefore good and valuable consideration flowing to Beard in the transaction. The plaintiff having failed to establish an intent to defraud and having failed to establish a lack of good and valuable consideration in the transaction, the Court is of the opinion that the three elements essential to a fraudulent conveyance claim have not concurred, and that the defendants must prevail. *See Roddam v. Martin,* 285 Ala. 619, 235 So.2d 654 (1970).