BENDIX HOME SYSTEMS, INC.,
Plaintiff-Appellant,

v.

HURSTON ENTERPRISES, INC., et al.,
Defendants-Appellees.

No. 77–2569
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1978.

Rehearing Denied Feb. 28, 1978.

---

10. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 433 (1974).

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Robert E. Austin, Jr., Timothy A. Burleigh, Leesburg, Fla., for plaintiff-appellant.

Henry E. Coleman, Tavares, Fla., for defendants-appellees.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

Bendix Home Systems, Inc., a Michigan corporation, sued Hurston Enterprises, Inc., Capital Mobile Homes, Inc., and Service Contract Company, Inc., Florida corporations, to recover $45,121 owed Bendix from the sale of four custom built mobile homes to Capital. Service Contract Company counterclaimed against Bendix for $34,000 which Bendix owed Service for warranty, service and repair operations on mobile homes. The parties stipulated to the amounts involved. Because Capital was insolvent at the time of the suit, Bendix sought to sét aside the separate corporate identities of the three companies and to aggregate their assets.[1] The case was tried

---

1. Disregard of the corporate entities would have permitted Bendix to set off the $34,000 it owed Service Contract Company against the debt that Capital Mobile Homes owed Bendix.

to the court which held that Bendix had not, as a matter of law, met its burden to demonstrate that the corporate entities should be disregarded and entered judgment for Bendix against Capital for $45,121 and Service against Bendix for $34,000.

■ The trial court applied the test for disregard of corporate entities set out in *Berger v. Columbia Broadcasting System,* 453 F.2d 991, 995 (5 Cir. 1972). Although *Berger* involved a suit in a Florida district court, the law which was applied by agreement of the parties was that of New York. *Id.* at 994. We, however, are governed by the general rule that a federal court sitting in a diversity case must apply the law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[2] We must, therefore, determine whether there is any material difference between Florida's law and the test adopted by the trial court and whether the trial court was correct in its conclusion that there was no evidence of conduct warranting disregard of the corporate entity.

■ The test set out in *Berger* requires that a plaintiff seeking to set aside a corporate identity must show that there has been:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Florida applies a rule that the separate identities of two or more corporations will be disregarded on a showing that one corporation is a "mere instrumentality" of the other, *Aztec Motel v. State ex rel. Faircloth,* 251 So.2d 849 (Fla.1971); *Unijax, Inc. v. Factory Insurance Association,* 328 So.2d 448 (Fla.App.1976); *St. Petersburg Sheraton Corp. v. Stuart,* 242 So.2d 185 (Fla.App. 1971), and that the corporation is a device or sham to mislead creditors or exists for fraudulent purposes. *Gross v. Cohen,* 80 So.2d 360 (Fla.1955); *Computer Center, Inc. v. Vedapco, Inc.,* 320 So.2d 404 (Fla.App. 1975); *Sirmons v. Arnold Lumber Co.,* 167 So.2d 588 (Fla.App.1964). We think that there is no material difference between the *Berger* requirements under which a plaintiff must show that the individual or corporation sought to be held liable completely "dominated" the other corporation and used that domination to commit an unjust act or wrong and the Florida rule which requires a finding of mere instrumentality and that the instrument corporation was used to mislead the creditor or for fraudulent purposes. While the trial court was technically incorrect in applying *Berger* the lack of material difference between the law applied and the law which should have been applied permits us to pass to the question whether Bendix failed, as a matter of law, to demonstrate that the corporate identities should be disregarded.

In any suit to disregard the corporate entity, it is of primary importance to examine the relationships between the corporations and individuals involved. In the present case Bendix seeks to treat the assets of Hurston Enterprises, Inc., Capital Mobile Homes, Inc., and Service Contract Company, Inc. as one fund. Bendix did not sue Edward Hurston individually and does not seek to hold him liable in this action. This requires us as a reviewing court to look to the actions of Edward Hurston as president of Hurston Enterprises, Inc. and

**2.** We voice no opinion on the correctness of the *Berger* court's decision to apply New York law. Florida law may direct that the court honor the agreement of the parties. That question is not before us in this diversity case and we therefore apply the law to which *Erie* directs us.

to determine whether Hurston Enterprises, Inc., the parent company, so controlled the activities of its subsidiaries that they were no more than mere instrumentalities used to mislead creditors.[3]

The trial court held that as a matter of law the plaintiff had failed to carry its burden to show conduct warranting a disregard of the corporate entity. The three defendant corporations are close, private corporations. Edward E. Hurston owns around 80% of Hurston Enterprises, Inc. shares. He was president of Hurston Enterprises and one of its directors. Hurston Enterprises owned all of the stock in Capital Mobile Homes and Service Contract Company.

■ Florida courts have long held that a corporate entity will not be ignored simply because the number of stockholders is few unless the circumstances are such as would warrant the same disregard of the entity were there many stockholders. *Sirmons v. Arnold Lumber Co.*, 167 So.2d 588 (Fla.App.1964). Thus the fact that Hurston Enterprises, Inc. owned all of Capital and Service stock does not permit the court to disregard the separate identities · unless there are other aggravating circumstances.

■ Bendix alleged that the three corporations have some common directors and executives, that Capital was grossly undercapitalized, that Capital and Service paid a salary to Mr. Hurston while Hurston Enterprises did not, and that the formal legal requirements with respect to Capital and Service were only loosely observed. An independent examination of the record reveals that despite these allegations Bendix failed to show that Hurston Enterprises, Inc. exercised an impermissible degree of control over Capital or Service or that Capital or Service were treated as one by the parent company. The presence of common directors, absent a showing that Hurston Enterprises manipulated them or that they treated the subsidiaries as one with each other and the parent company, is not evidence requiring a court to pierce the corporate veil. Capital Mobile Homes, Inc. had $5,000 capitalization. We cannot say that this is gross undercapitalization. Capital and Service maintained separate bank accounts, were separately listed in the telephone book, utilized separate stationery and substantially complied with the formal requisites of corporate existence. The $250 per week salary paid to Hurston by Capital and Service was not an amount which permits us to infer that either Edward Hurston or Hurston Enterprises was bleeding the other two companies.[4]

■ Florida law requires, in addition to a finding of mere instrumentality, that the corporate structure be used to mislead a creditor. The record shows that Bendix was not misled concerning the financing of the custom built mobile homes. It is true that general inventory mobile homes were "floor planned". The four custom built homes, however, were released to Capital by Bendix before any payment was re-

---

**3.** During the trial Bendix made much of the fact that the bank which had "floor planned" Capital's inventory of mobile homes had extended credit to Capital on the basis of Mr. Hurston's individual guarantee. While this circumstance may have been some indication that the line between Hurston as an individual and Capital was somewhat fuzzy, it is no indication that the lines between the three corporations were not properly maintained.

**4.** As the Florida court has said in an analogous situation involving a creditor seeking to hold liable individual stockholders:

In order to [enter an order for] individual stockholders to show cause why they should not be held personally accountable for the corporation's debts, there should be a preliminary showing that the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the . . . corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fidely established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.

*Advertects, Inc. v. Sawyer Industries*, 84 So.2d 21 (Fla.1955). In the present case there was no evidence that either Hurston Enterprises, Inc. or Service Contract Company benefits from the demise of Capital Mobile Homes.

ceived. Bendix now alleges that it took those actions only because Capital agreed to give Bendix a check at the time that the papers were transferred and agreed that the check could be cashed within thirty days. We need not resolve the dispute centering around that agreement. We set out these financing details only because they clearly indicate that Bendix was undeceived about Capital's financial position and that Bendix had reason to know from its past experience with floor planning that it would have to look to Capital for payment of the amounts owed on them.[5] Having let the mobile homes and the title papers pass to Capital before it received payment, Ben-

dix cannot now claim that Capital's corporate structure involved it in its present position.

We agree with the district court that there is no evidence warranting the disregard of the corporate entities of Hurston Enterprises, Capital Mobile Homes and Service Contract Company. The district court is AFFIRMED.

---

5. In the normal floor plan arrangement Bendix sent the papers to the floor planning bank which then sent Bendix the money for the mobile homes. Bendix now says that it intended that the custom built homes would be treated in the same way, yet it released the papers to Capital rather than to the bank.