KENNETH A. STOECKLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent BROWN, EGGERS and MITCHELL, INC., FORMERLY KENNETH A. STOECKLIN, C.P.A., P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE , Respondent
Stoecklin v. Commissioner
Dockets Nos. 5558-84; 6436-84.
United States Tax Court
T.C. Memo 1987-453; 1987 Tax Ct. Memo LEXIS 450; 54 T.C.M. (CCH) 452; T.C.M. (RIA) 87453; September 9, 1987. *450 In 1977, petitioner established the Kenneth A. Stoecklin Equity Trust and Kenneth A. Stoecklin C.P.A., P.C., a professional corporation. Petitioner transferred to the Trust certain property and his lifetime services. The Trust then contracted with the corporation for petitioner's services. Held: petitioner may not use the Trust to avoid taxation on his earned income; held further, other income of the Trust attributed to petitioner under section 671 et seq.; held further, petitioner must recognize the fair market value of silver coins paid to the Trust; held further, petitioner is denied a loss on the purported worthlessness of certain promissory notes; held further, petitioner is allowed short-term capital gain treatment on proceeds of corporate liquidation; held further, petitioner has not sustained his burden of proof on remaining issues. Kenneth A. Stoecklin, pro se. Stephen R. Takeuchi and Keith H. Johnson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By notice dated December 12, 1983, respondent determined a deficiency in the individual petitioner's Federal income tax for the years and in the amounts as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
[1] *451 6651(a) 6653(a)(1)
6653(a)(2)
1978
$ 903
$ 226
$ 45
0
1979
979
0    49  0
1980
2,075
0    104 0
1981
2,450
0    123 50% of int.
due on $ 2,450
By notice also dated December 12, 1983, respondent determined deficiencies in the corporate petitioner's Federal income tax as follows: Additions to Tax
Section
Section
Fiscal Year Ending
Deficiency
6653(a)(1)
6653(a)(2)
3/31/81
$ 3,821
$ 191
0
3/31/82
2,852
143  50% of int.
due on $ 2,852
Respondent has since conceded all issues concerning the corporate petitioner. All further references to petitioner are in reference to the individual. Respondent's determination of deficiency regarding petitioner is primarily a result of reallocating the income of the Kenneth A. Stoecklin Equity Trust (Trust) to petitioner, who was the grantor of the Trust. In an amended answer, respondent adjusted his deficiency and addition determinations upward to reflect the fair market value of silver coins received by the Trust. [2] *452 Respondent's final determination is as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1978
$ 6,391
$ 1,598
$ 320
0
1979
5,416
0
271  0
1980
12,537
0
627  0
1981
10,060
0
503  50% of int.
due on $ 10,060
The primary issue in this case involves the establishment and maintenance of the Trust. Respondent seeks to impute the Trust's income to petitioner on any of several grounds: (1) that petitioner's use of the Trust violates assignment of income principles; (2) that the creation of the Trust, and the transfer of assets and petitioner's lifetime services to it is a sham transaction; (3) that the grantor trust rules of section 671 et seq., require that petitioner be taxed on the Trust's income; and (4) that the income, deductions, and credits claimed by the Trust should be reallocated to petitioner pursuant to section 482. Petitioner maintains that the Trust was bona fide in all respects, should be recognized for Federal income tax purposes, and that section 671 et seq., is not applicable. Petitioner contests respondent's determination of deficiencies *453 in respect of certain other transactions involving a purportedly worthless business debt and the liquidation of a corporation. Petitioner also contests respondent's determination that petitioner is subject to certain investment credit and depreciation recapture, is not entitled to a capital loss carryover to 1978, and is liable for self-employment tax. Petitioner further contends that the statute of limitations bars assessment of any tax for 1978 and 1979. These issues will be discussed separately. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits are incorporated herein by this reference. Petitioner was a resident of Crystal River, Florida, at the time he filed his petition herein. Petitioner has been a practicing certified public accountant since 1957, with 20 to 25 percent of his practice concerned with tax matters. He spent most of his career in Southwestern Ohio until he moved to Florida in 1980 due to his health. On November 19, 1977, petitioner established the Kenneth A. Stoecklin Equity Trust. The Trust document reads in pertinent part as follows: THIS DECLARATION OF TRUST authorizes its Trustees to operate under *454 the name of Kenneth A. Stoecklin Equity Trust
THIS AGREEMENT, IRREVOCABLE CONVEYANCE and ACCEPTANCE is made and entered into at the time and on the date appearing in the acknowledgement hereto attached, by and between Kenneth Alvin Stoecklin
who drafted this EXPRESS TRUST as THE CREATOR HEREOF and GRANTOR HERETO and Helen Rae Stoecklin (Adverse Party Trustee) and James P. Manson (Trustee) ACCEPTORS hereof in joint tenancy, who shall compose The Board of Trustees and Executive Officers for conducting said business. The Grantor hereby constitutes and appoints the above designated Trustees to be, in fact, Trustees of The Trust hereby created and established. The Grantor for and in consideration of the objects and purposes herein set forth, the cash sum of One Dollar, in hand paid, and other considerations of value listed in Schedule A of this agreement, the receipt of which is hereby acknowledged, does hereby agree to sell, assign, convey and deliver until said Trustees, IN TRUST - who are to hold legal title in joint tenancy and not as tenants in common, to collectively act by virtue of this covenant as a Board of Trustees under the name herein designated - certain properties, business *455 projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business goodwill, or other business desired to be engaged in by said Trustees. * * * TRUSTEES
Trustees shall be not less than two in number but may be increased for practical reasons beneficial to The Trust. * * * PROVIDED, HOWEVER, that A Trustee may resign or be removed from office by a resolution of unanimous concurrence of the remaining Trustees when in their opinion said Trustee shall have been guilty of fraud, malfeasance in office, gross neglect of duty, or for cause by the mandate of a court of competent jurisdiction; * * *. * * * TRUSTEE'S MEETINGS
* * * At any regular or special meeting a MAJORITY of the Trustees shall constitute a quorum for conducting business, PROVIDED, affirmative action may only be had upon a MAJORITY vote of the Trustees, whether present or absent, * * *. POWERS OF TRUSTEES
Trustees' powers shall be construed as general powers of citizens of the United States of America, to do anything any citizen may do in any state or country, subject to the restrictions herein noted. * * * A Minute of Resolutions of The Trustees authorizing what it is *456 they determine to do or have done shall be evidence that such an act is within their power. * * * * * * OFFICERS AND MANAGEMENT
The Trustees may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. Any Trustee may hold two, or more, offices simultaneously, their duties being such as are usual or are prescribed. They may employ agents, executives, or other employees, or designate third persons to hold funds for specific purposes. EXPENDITURES
The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, * * *. * * * TRUSTEES DECLARATION OF PURPOSE
THE PURPOSE OF THIS EXPRESS TRUST shall be to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Kenneth Alvin Stoecklin can maximize his or her lifetime efforts through the utilization of his or her Constitutional Rights; for the protection of his or her family in the *457 pursuit of his or her happiness through his or her desire to promote the general welfare, all of which Kenneth Alvin Stoecklin feels he or she will achieve because they are compatible with his or her RELIGIOUS BELIEFS. * * * DOCUMENT
It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither The Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust, nor shall they be personally liable hereunder, as partners or otherwise; * * *. CERTIFICATES OF INTEREST
For convenience the equitable interests for distribution shall be divided into One Hundred (100) units, * * *. DEATH - INSOLVENCY - BANKRUPTCY
* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof, nor shall the death of a holder entitle his heirs or legal representatives to demand any partition or division of the property of The Trust, nor any special accounting, but said successor may succeed to the same equitable or distributional interest upon the surrender of the certificate *458 as held by the deceased for the purpose of reissue to the then lawful holder or owner. DURATION - CLOSURE
This Trust shall continue for a period of twenty-five years from date, unless The Trustee shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values or other goods and sufficient reason, liquidate the assets, distribute and close The Trust at an earlier date determined by them. * * * On the date the Trust instrument was executed, petitioner's wife, Helen Rae Stoecklin, conveyed to petitioner her entire interest in his real and personal properties, which were in turn conveyed by petitioner to the Trust. It is not known what other real and personal properties were transferred to the Trust. [3]
At the first meeting of the board of trustees on November 19, 1977, petitioner was appointed "Executive Manager." The duties petitioner was to perform under this title were ostensibly part of his lifetime services that were placed in the Trust. In this capacity, petitioner was given powers *459 to manage only, but was authorized to sign checks on behalf of the Trust, and could be assigned additional duties from time to time by action of the board of trustees. Petitioner's compensation was fixed by the board at 250 silver dollars per month. The board of trustees further resolved that petitioner was to be provided adequate transportation, an office and supplies, and was to be reimbursed for all his medical and dental expenses. The trustees authorized an expenditure of $ 140 per month for petitioner's transportation expenses. At this first meeting the board of trustees resolved that the 100 beneficial units of the Trust would be issued to petitioner. A share ledger was created, crediting petitioner with the 100 shares. On that same day, he assigned these shares as follows: Name
Shares
Helen Rae Stoecklin (wife)
34
Kenneth W. Stoecklin (son)
26
Joan M. Stoecklin (daughter)
20
Howard E. Liebelt (unrelated)
20
Helen Stoecklin subsequently assigned her units to other members of petitioner's family [4] *460 with the result that only petitioner's children, grandson, and Howard Liebelt held units in the Trust. No distributions were ever made in respect to these units. At the next meeting of the board of trustees, on November 29, 1977, petitioner was added as a third trustee. At the board of trustees meeting held on August 18, 1978, the resignation of Helen Rae Stoecklin as trustee was recorded. The remaining trustees resolved that Howard E. Liebelt would be contacted and requested to serve as replacement trustee. He accepted this appointment on August 21, 1978. The resignation of James P. Manson was recorded at a meeting of the board of trustees on August 31, 1978. While accepted on these dates, neither of the resignation documents executed by Helen Rae Stoecklin and James Manson were dated. Thereafter, petitioner and Howard Leibelt served as the only trustees. However, neither Helen Rae Stoecklin, Manson, nor Liebelt exercised any independent judgment with respect to the Trust assets, and were no more than mere nominees of petitioner. [5] *461 On December 12, 1977, petitioner incorporated his accounting practice under the name of Kenneth A. Stoecklin, C.P.A., P.C. [6] (Corporation). Petitioner was the sole shareholder of the Corporation. It did not have, and was not intended to have, any other employees. On December 16, 1977, the Trust and the Corporation entered into a contract for the services of petitioner. That contract read in pertinent part as follows: IT IS AGREED that the KENNETH A. STOECKLIN EQUITY TRUST (a trust) contracts the services of Kenneth Alvin Stoecklin to the "Client" KENNETH A. STOECKLIN, C.P.A., P.C., on an "Independent Contractor" basis, for as much time each month as is required by "Client". This agreement is made for the purpose of establishing an Independent Contractor relationship and contractual agreement between the parties identified above and excludes absolutely any employee-employer style relationship. * * * Taxes. It is understood *462 between the parties that withholding taxes and other payroll related taxes are not applicable since an employee-employer relationship is absolutely excluded. * * * Under the terms of the contract, the Corporation was to pay the Trust 250 silver dollars per month for petitioner's services. [7] *463 In order to fulfill its contractual obligation, the Corporation spent $ 22,475 to buy silver dollars for the fiscal year ending March 31, 1981. It took a deduction in that amount, which it labeled "contracted administration." For the fiscal year ended March 31, 1982, the Corporation paid $ 16,754 for silver dollars, and treated the expense in like manner. However, as these silver dollars were paid over to the Trust pursuant to the terms of the employment contract, the Trust recognized only their face value. The contract was terminated on September 30, 1982, since payment under it was greatly in arrears, and silver dollars had become prohibitively expensive. On that same date, petitioner was released by the Trust from his lifetime indenture. On December 17, 1977, the Trust and the Corporation entered into an agreement under which certain property, equipment or vehicles [8] were to be leased to the Corporation by the Trust. The lease called for a monthly payment to the Trust of $ 200. This sum was paid by the Corporation by check. Crash Coal Company
On December 18, 1974, an April 10, 1975, petitioner received promissory notes from Crash Coal Company (Crash) in the amount of $ 6,250 and $ 250, respectively. These notes were signed by petitioner in his capacity as treasurer of Crash. On January 14, 1975, Crash filed an election to be treated as a subchapter S corporation. For the calendar year ending December 31, 1975, petitioner reported a loss in the amount of $ 7,877.76 which represented his distributive share of losses in Crash. Petitioner contends that Crash became insolvent in 1978. Petitioner initially took the position that any investment in Crash was for section 1244 stock which had become worthless, and for which he is entitled to an ordinary loss. Along with this contention, he claims that Crash's subchapter S election *464 was invalid. Petitioner now contends that he made no investment in capital stock of Crash, but was a mere creditor, and is therefore entitled to a short-term capital loss. [9]
Liquidation of Import Barn
On his 1980 return, petitioner reported a gain of $ 11,500 on what was designated on his return for that year as the sale of a partnership interest which he had acquired in January 1978 [10] *465 for $3,500. Petitioner had originally invested $ 3,000 [11] with one Krusling who was until that time operating a car repair business as a sole proprietorship. Petitioner thereby became a participant in a joint venture. He persuaded Krusling to incorporate the business which was later known, among other things, as Import Barn. While no shares of stock were ever issued to petitioner, his interest in the joint venture became an equity interest in the corporation. Petitioner did not perform any services for the corporation during the time it was in operation. After Krusling's untimely death, petitioner liquidated the corporation. Petitioner received $ 15,000 of the liquidation proceeds. Petitioner has no records of the transaction. Miscellaneous Items
Petitioner contests respondent's determination that petitioner is liable for self-employment tax on the earned income which he attempted to assign to the Trust, that he must recapture certain investment tax credits in 1978 and 1979, that he recognized $ 1,099 of ordinary income on the disposition of section 1245 property in 1978, and that he is not entitled to a capital loss carryover to 1978. Petitioner has come forward with no evidence in support of his various positions regarding these issues. Petitioner filed his 1978 Federal income tax return on September 26, 1980; his 1979 Federal income tax return was deemed filed on April 15, 1980. *466 As respondent's notice is dated more than 3 years after both these dates, petitioner contends that any additional assessment for those years is barred by the statute of limitations. Petitioner also claims a dependency exemption in 1978 for his daughter Joan which has been disallowed by respondent. Petitioner's daughter did not live with him during that year, and he gave her no more than $ 1,030, none of which he gave her until September 1978. Petitioner has produced no evidence concerning the total amount of support required by his daughter in 1978. Respondent contends that his deficiency is timely since there is a substantial omission as defined in section 6501(e) in petitioner's 1978 and 1979 income and that the statute of limitations was tolled during the pendency of certain summons enforcement action. [12] *467 OPINION Petitioner devotes a large portion of his petition and briefs to those same frivolous arguments so often considered and rejected by this and other courts. It is by now well settled that the Tax Court has jurisdiction to consider constitutional questions. ; that wages are taxable income and that there is no constitutional right to a jury trial in the Tax Court, ; that Federal Reserve notes are legal tender, ; and that the examination of a taxpayer's Federal Income tax returns does not constitute an invasion of privacy or an unlawful search and seizure, . The cases are replete with examples of such frivolity, and we would add nothing to this sound body of law by engaging in an extensive discussion here. Kenneth A. Stoecklin Equity Trust
The main issue in this case presents us with another so-called family equity trust. The language in the trust documents found in this case is strikingly similar to that found in the published *468 cases. Likewise, those courts that have been faced with the issue have been uniform in their determinations that such entities will not allow a taxpayer to shift the incidence of taxation away from him to the Trust. See ; . Such devices are no more than "a tax protector's scheme for tax reduction and/or avoidance through multiple income splitting and extensive administration expenses." . One of the most fundamental principals of income taxation is "that income is taxed to the party who earns it and that liability may not be avoided through an anticipatory assignment of that income, * * *." . However, "The underlying and more difficult question * * * is the determination of who, in fact, controls the earning of the income." [Emphasis supplied.] ; . The determination of who controls the earning of income is dependent upon the two factors. The first is whether the Trust is to direct or control petitioner's *469 activities in any meaningful manner. The second is whether there is a contract between the Trust and the corporation indicative of an agreement between those two entities recognizing the Trust's controlling position. . [13]
We find that the Trust had no meaningful control over petitioner's activities, notwithstanding that he purportedly conveyed to it the exclusive use of his lifetime services. Indeed, "it is questionable whether the Trust could obligate [petitioner] to perform these services which are so inherently personal in nature." . This conveyance in form was not a conveyance in substance and did not operate to make petitioner a bona fide servant of the Trust. ; . Moreover, as the sole effective trustee, petitioner could have caused the Trust to be dissolved at any time in accordance with the termination provision of the Trust instrument. An analysis *470 of the second factor set forth in Benningfield serves to demonstrate the degree to which petitioner controlled the earning of income. The contract for services entered into by the Trust and the Corporation states that the Trust shall have the exclusive right to determine the method by which the Corporation's desired results shall be achieved. However, this contract concerns the services of the one person having control over the corporation as sole shareholder and the Trust as sole effective trustee. Neither the Trust nor the Corporation may be said to have had control of petitioner's activities. Petitioner was the sole moving factor behind the Trust's earned income and should be taxed thereon. Cf. . We therefore hold that the income earned by petitioner through his services should be taxed to him. The Corporation paid the Trust 250 silver dollars per month for the services rendered by petitioner. In turn, the Trust paid petitioner 250 silver dollars per month to manage the assets of the Trust. In his amended answer, respondent determined that petitioner should be taxed on the fair market value of the coins; therefore respondent has the *471 burden of proof in respect to the increased deficiency. Rule 142(a). However, the facts are not in dispute. We hold as a matter of law that petitioner is taxable on the fair market value of the silver dollars received. The basic tenor of petitioner's argument in this regard is that only silver coins are "legal tender" and may be taxed only on their face value. We addressed a similar issue in , affd. , where transactions in which Swiss Francs were exchanged for U.S. Double Eagle gold coins, "were in substance an acquisition of property, valuable coins * * *." . Our reasoning was followed in , wherein the court had "no difficulty in holding that the gold coins here, though legal tender and hence 'money' for some purposes, are also 'property' to be taxed at fair market value because they had been withdrawn from circulation and have numismatic worth." . The coins here at issue were not in circulation and the Corporation was required *472 to purchase them through various coin dealers. The fact that they are silver rather than gold does not change their character as "property." It is their status as property other than money that is determinative of this issue. [14] See also . The next issue is whether rents, interest, and litigation fees reported by the Trust are properly attributable to petitioner under the grantor trust rules of sections 671 through 678. [15] Section 671 provides that if a grantor is considered the owner of any portion of a trust, all the income, deductions, and credits attributable to that portion are included in his income. Section 675 requires the grantor to be treated as the owner of the trust if the grantor can exercise certain administrative powers over either the corpus or the income without the consent of an adverse party. [16] An adverse party is defined in section 672(a) as "any person having a substantial beneficial interest in the trust which would be adversely *473 affected by the exercise or nonexercise of the power which he possesses respecting the trust." Petitioner contends that Liebelt is an adverse party, and since the board of trustees may only act through a majority of its members, Liebelt's consent is required for petitioner to direct who may benefit from the Trust. *474 While this may be true on paper, we look to "the objective economic realities, rather than the particular form in which the agreement was cast, * * *." ; . The question of whether a party is truly adverse is one of fact to be decided on the merits of each case. ; , affg. . However, even if the section 672 definition of an adverse party is satisfied, sections 674-677 require a trust's income to be taxed to the grantor unless the consent of the adverse party is required before the grantor may exercise any of those enumerated powers. Respondent having determined that the grantor trust rules are applicable, the burden of proving otherwise falls on petitioner. ; Rule 142(a); . A similar situation confronted us in , in which the taxpayer argued that two of his children, both trustees and both holding beneficial units of the trust, were adverse parties. *475 We found as a fact that the consent of these parties was not required for the taxpayer to act in respect of the trust. Neither of the children were ever consulted concerning trust matters or present at trustee meetings, and both had signed blank resignations and trust minutes.[17]
We are no less convinced that the result in should obtain here. While Liebelt attended "meetings" of the board of trustees, petitioner signed all trust checks, kept all records and receipts, and kept possession of the silver coins for all but an insignificant period of time. [18] *476 Liebelt's testimony makes clear that his was a rubber stamp consent for petitioner, and had Liebelt asserted himself otherwise, he would have been removed as trustee at any time by petitioner. [19] Because Liebelt's consent was not required for petitioner to deal with the Trust and its assets as he saw fit, we find section 675 applicable *477 and conclude that rents, interest, and litigation fees reported by the Trust are properly attributable to petitioner. Section 675 provides that the grantor shall be treated as the owner of the trust to the extent that he can deal with the trust for less than adequate security, or exercise other powers without the consent of an adverse party. Given the degree of control petitioner exercised over the Trust and the testimony of Liebelt, we infer that any evidence petitioner may have been able to produce in regard to those powers enumerated in section 675 would have been unfavorable. See , affd. . At the very least, petitioner has not sustained his burden of proof on this issue. Rule 142(a); Respondent also asserts that amounts imputed to petitioner are subject to self-employment tax pursuant to section 1401 et seq. Section 1401(a) imposes the tax upon "the self-employment income of every individual." Section 1402(b) defines the term "self-employment income" as "net earnings from self employment." Such earnings include, "the gross income derived by an individual *478 from any trade or business carried on by such individual, less the deductions allowed by this subtitle * * *." Sec. 1402(a). We find that petitioner was engaged in a trade or business as a certified public accountant and that the income he derived pursuant to the contract for services between the Corporation and the Trust is subject to self-employment tax. Our decision is supported by the contract entered into between the Corporation and the Trust. That contract stated that the Trust contracted the services of petitioner to the Corporation on an independent contractor basis, and that since no employment relationship was created, withholding and employment taxes were inapplicable. Having been given the opportunity to choose the form of the contract petitioner has "less freedom than the Commissioner to ignore the transactional form that he has adopted," ; , and we have held that independent contractors are subject to self-employment tax. . In any event, petitioner has come forward with no evidence showing that he is not liable for self-employment *479 tax. Petitioner having not met the burden of proof imposed upon him by Rule 142(a), we find for respondent on this issue.
Crash Coal Corporation
Petitioner's characterization of his investment in Crash Coal Company, a subchapter S corporation, has in all instances conveniently conformed to that treatment which would reap the greatest tax benefits at any given time. [20] The one fact that is clear is that petitioner has not proven that he invested any more than $ 6,500 in Crash. However, from this $ 6,500 investment, petitioner has reaped over $ 7,800 worth of tax benefits through his distributive share of losses in Crash. We agree with respondent that the doctine of quasi-estoppel or duty of consistency applies in the present case. In , affd. , *480 we adopted the three elements of quasi-estoppel as set forth in : (1) The taxpayer has made a representation or reported an item for tax purposes in one year, (2) The Commissioner has acquiesced in or relied on that fact for that year, and (3) The taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessment bars adjustments for the initial tax year.
See also . [21]
We find that the three elements are present in this case. By claiming his distributive share of losses in Crash, a subchapter S corporation, petitioner has represented his contribution as an investment in capital stock. Respondent has relied upon petitioner's representation in that he allowed petitioner his distributive share of Crash *481 losses in 1975 in the amount of $ 7,877.76 [22] Finally, the year in which the distributive losses were allowed, 1975, is now closed by the statute of limitations. [22]
Our holding does no more than to prevent petitioner from receiving a further double tax benefit. In this respect, this case is similar to , affd. , wherein we held that a purported sale at a loss in a previous year which resulted in a tax benefit to the taxpayer may not be recharacterized in a later year as a mortgage for purposes of increasing the basis upon which depreciation deductions may be taken. See also , affg. , wherein the Fifth Circuit [23] *482 stated "that when a taxpayer receives a tax advantage from an erroneous deduction, he may not deduct the same amount in a subsequent year after the Commissioner is barred from adjusting the tax for the prior year.," Therefore, we hold for respondent on this issue. Liquidation of Import Barn
Respondent seeks to characterize petitioner's $ 3,000 [24] investment in Import Barn as a loan, the excess of the liquidation proceeds to be recharacterized as either interest on the loan or compensation for services rendered in connection with Import Barn's liquidation. We find that petitioner did in fact acquire an equity interest in the corporation, rather than being a mere creditor or employee. Petitioner was not involved in the day-to-day operations of Import Barn, and took no action to participate in the affairs of the corporation until Krusling's death. We find no basis for denominating the $ 11,500 as either compensation or interest. Therefore, the amounts distributed by Import Barn are treated as if in full payment in exchange for petitioner's stock. Sec. 331(a)(1). Having found that the gain is capital in nature, we next turn to the issue of its status as short-term or long-term. The parties have stipulated that if such gain is found *483 to be capital, that it shall be considered as short-term capital gain. [25] We find nothing in the record compelling us to find that petitioner held his investment for more than 1 year and therefore hold that such gain is capital gain. [26]
Miscellaneous Items
Petitioner has presented us with various other issues which include investment tax credit carryovers, a capital loss carryover, and gain on the disposition of section 1245 property. After concessions by respondent, the remaining issues are (1) whether respondent correctly determined *484 that $ 1,099 of ordinary income should be recognized in 1978 upon petitioner's disposition of section 1245 property; (2) whether $ 310 of investment tax credit allowed to petitioner in 1978 should be recaptured in 1979; (3) whether petitioner is required to recapture $ 275 of investment tax credit in 1978; (4) whether petitioner is entitled to a capital loss carryover to 1978; and (5) whether petitioner is entitled to a dependency exemption for his daughter Joan in 1978. The burden of proof in regard to these issues is upon petitioner. Rule 142(a); . Petitioner provided no evidence whatsoever concerning the 1978 recapture of ordinary income on the disposition of section 1245 property, or the 1978 and 1979 recapture of investment tax credit. Neither has petitioner proven that he is entitled to a capital loss carryover to 1978. Therefore, we hold for respondent on these issues. Petitioner claimed a dependency exemption for his daughter Joan for the year 1978. His daughter did not live with him during 1978, but petitioner gave her $ 1,030 during that year, a portion of which went for tuition to nursing school that fall. He sent her no money *485 until September 1978. Section 151(e) allows an exemption for each dependent [27] who is a child of the taxpayer and is either younger than 19 years at the close of the calendar year or is a student. We are unpersuaded that the $ 1,030 petitioner provided to his daughter constituted one half of her support for the year. We therefore find for respondent on this issue. Statute of Limitations in Years 1978 and 1979
Petitioner contends that respondent is precluded from assessing any additional income taxes for the years 1978 and 1979 since the statutory notice of deficiency for such years was issued on December 12, 1983, more than 3 years after the due date for petitioner's 1979 return. Respondent disputes petitioner's contention on two grounds: that the statute of limitations was tolled during such time as actions were pending to enforce third party record-keeper summonses, or, alternatively, that the statute of limitations is extended to 6 years pursuant to *486 section 6501(e). We find that section 6501(e) is applicable in this case and do not reach the question of the tolling of the statute during pendency of the enforcement actions. Section 6501(e) provides that the statute of limitations will be extended to 6 years "If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income started in the return * * *." Petitioner reported gross income in the amount of $ 2,200, and $ 6,814 for the years 1978 and 1979, respectively. The amount of income that petitioner attempted to assign to the Trust is easily in excess of 25 percent of this amount. Therefore, we find that respondent is not precluded by the statute of limitations from assessing additional taxes from the years 1978 and 1979.
Additions to Tax Under Sections 6651(a)(1) and 6653(a)
Petitioner filed his Federal income tax return for 1978 on September 26, 1980. Respondent has determined an addition to tax under section 6651(a) for that year. Since petitioner has come forward with no evidence to show that he had reasonable cause for his failure to file a timely 1978 Federal income tax return, we hold for *487 respondent on this issue. Respondent further determined that petitioner was liable for an addition to tax under section 6653(a)(1) for all years at issue. Section 6653(a)(1) provides for an addition in the amount of 5 percent of any underpayment if any part of the underpayment "is due to negligence or intentional disregard of rules and regulations * * *." Respondent also determined an addition to tax under section 6653(a)(2) which allows a further addition in the amount of 50 percent of the interest upon those portions of the underpayment which are attributable to a taxpayer's negligence or intentional disregard of the rules and regulations. The section 6653(a)(2) addition is sustained for 1981 only. We find petitioner liable for these additions. Petitioner was a certified public accountant with over 20 years experience at the time he established the Kenneth A. Stroecklin Equity Trust. A significant portion of his experience was in the field of Federal income taxation. While petitioner has asked to be held to a somewhat lesser standard than that of a practicing attorney, we find that he either was or should have been sufficiently aware of the tax consequences of the transactions *488 involving the Trust, the Corporation, and Crash Coal Company, to know that they would not be given effect. See . Further, due to the fact that petitioner was the sole moving factor in the Corporation and the Trust, we think that his failure to recognize the fair market value of the silver dollars which he received provides a clear example of his intentional disregard of the tax laws. We note that petitioner has the burden of proof in regard to respondent's determination of section 6653(a)(1) and (2) additions. ; Rule 142(a). Petitioner has produced no evidence tending to show that he is not liable for the additions. Therefore, respondent's determination of an addition under section 6653(a)(2) extends to all items. In his brief, and at trial, respondent asked this Court to impose damages upon petitioner under section 6673. Respondent contends that these proceedings were instituted or maintained by petitioner primarily for delay and that his position in these proceedings is frivolous or groundless. While we have no sympathy towards him, we find for petitioner on this issue. In his *489 petition and on brief, petitioner has presented us with many of the classic tax protestor arguments. He has filed numerous motions, all of which have been without merit. He has gone to great lengths to thwart respondent's attempts to determine his true income tax liability and has grudgingly cooperated with respondent only when absolutely required to do so. However, petitioner has prevailed on a not insubstantial issue in the case, and has failed in others merely because he has not met his burden of proof. We therefore decline to award section 6673 damages in this case. In accordance with the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. 2. A deduction for the purchase of silver coins paid by Kenneth A. Stoecklin, C.P.A. to the Trust was the sole item in respect of which a deficiency was determined in the Corporation's Federal income tax for its 1981 and 1982 fiscal years. Respondent has since conceded that such purchase constituted an ordinary and necessary business expense. 3. An attachment listing all other property transferred was referred to in the Trust document, but was not produced by the parties. ↩
4. Petitioner and Helen Stoecklin were divorced in 1978. 5. Prior to the August 31, 1978, trustees' meeting the business conducted by the trustees consisted of granting the 100 beneficial units of the Trust to petitioner, appointing him executive manager and approving his compensation and expense allowance, adding him as trustee, approving the Trust/Corporation employment and lease agreements, accepting the resignation of Helen Stoecklin and Manson, and appointing Liebelt trustee. 6. Kenneth A. Stoecklin, C.P.A., P.C., is the predecessor to the corporate petitioner, Brown, Eggers, & Mitchell, Inc. ↩
7. The Corporation did make one $ 5,000 payment to petitioner as an employee in 1979. The Corporation filed an employment tax return reflecting this payment. 8. Although referred to in the lease, no list or description of these items was offered. ↩
9. Petitioner does not contend that he is entitled to a section 166 bad business debt deduction. Because of our resolution of this issue, we do not reach this question. ↩
10. While the date of purchase was set forth in petitioner's 1980 Federal income tax return, there is no other evidence in the record upon which to base a finding that the $ 11,500 gain, if capital, would be long-term gain. 11. Petitioner claimed a $ 3,500 basis on his return, however his testimony makes clear that he had only a $ 3,000 basis in his investment. Respondent has not sought to tax the additional $ 500 of gain. ↩
12. Between the time petitioner's 1979 return was filed and the issuance of the deficiency notice, respondent caused several third party record-keeper summonses to be issued to financial institutions where petitioner did business. Pursuant to section 7609(b)(2) all those summoned were instructed by petitioner not to comply, whereupon respondent filed successful enforcement action in the appropriate United States district courts. 13. We would reach the same result under the "flexible approach" of . ↩
14. We are not unmindful of the fact that upon purchase of the coins, the Corporation took a deduction for their fair market value while the Trust recognized only the face amount. ↩
15. Petitioner argues that in order for any of the Trust's income to be reallocated to him we must find both the Trust and the contract for services illegal. We need not address this issue since "Notwithstanding the validity of the contract under State law, an anticipatory assignment of income * * * is not effective for Federal tax purposes." . ↩
16. Because petitioner had such absolute control over the Trust, we might just as easily find him to be the owner of the Trust assets under any of the grantor trust provisions. Indeed, "it would be totally unrealistic to assume that anyone * * * would transfer his lifetime services to [a] family trust without having such control." . A discussion of the application of each of these sections would only serve to unduly lengthen this opinion. ↩
17. See , where a trustee who served only 1 month without performing any duties was disregarded as a mere nominee. ↩
18. Liebelt's testimony leads to no conclusion other than that he was a mere nominee: Q. Who handled the bank accounts? A. Mr. Stoecklin. Q. Who paid the bills? A. Mr. Stoecklin. Q. Who prepared the receipts for the coins? A. Mr. Stoecklin. Q. As trustee, what did you do? A. Sat in on the meetings and signed whatever papers had to be signed. Q. And these papers, were they all furnished to you by Mr. Stoecklin. A. Yes. Q. Did you ever independently tell Mr. Stoecklin to draft up or prepare documents for your signature? A. No. Petitioner testified that Liebelt took physical possession of the coins for only about an hour at one of the trustee's "meetings." ↩
19. Petitioner's self-serving testimony concerning the substance of Liebelt's status as an adverse party is not credible, and we choose to disregard it. . We find Liebelt's testimony much more reflective of the economic realities of his involvement with the Trust and find that "There was no credible evidence that [he] in fact, ever exercised or was intended to exercise any authority whatever in respect of the trust" other than to sign whatever petitioner put in front of him. . See also du ↩. 20. Petitioner claims on his return that his "stock" in Crash was section 1244 stock which had become worthless. At the trial of this case, petitioner insisted that the instruments which he held were debt. On brief, petitioner treats at least $ 250 as a capital stock investment. We therefore agree with the statement in petition's brief that "the subject has been distorted beyond recognition." ↩
21. In reversing a summary judgment for the United States, the Court in Shook↩ found that the doctrine of quasi-estoppel was not applicable to the case before it. However, it stated that "The principal of law applied in the quasi-estoppel cases is perfectly valid." . 22. Notwithstanding the treatment he seeks here, petitioner has already received losses on his Crash stock in excess of his basis. ↩
23. The Eleventh Circuit, to which an appeal in this case would lie, has declared that it will follow precedent of the Fifth Circuit as it stood on September 30, 1981. .
24. See n. 11, supra.↩
25. While parties to a case may not stipulate as to the law, , we interpret this stipulation as the parties' aggreement that petitioner's interest was held for not more than 1 year, which is the 1978 holding period for long-term capital gain. Sec. 1222(2) and (3). ↩
26. Respondent has determined that gain on the liquidation of Import Barn is subject to self-employment tax. Petitioner's capital gain from Import Barn's liquidation is not from any trade or business carried on by petitioner. Therefore, the self-employment tax of section 1401 et seq. does not apply.↩
27. A dependent is defined as anyone or those persons listed in section 152(a) (including a son or daughter of the taxpayer) over one-half of whose support is provided by the taxpayer seeking the exemption provided by section 151.↩