In the Matter of COMMONWEAL, INC., Debtor.

COMMONWEAL, INC., Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 92–6411–8B1.
Adv. No. 92–583.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 12, 1994.

R. Wade Wetherington, for debtor/plaintiff.

A.B. Phillips, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon the Motion for Summary Judgment filed by the Plaintiff/Debtor, and Cross–Motion for Summary Judgment filed by the United States of America in the above captioned case. This Court has considered all arguments and evidence consistent with a ruling on a motion for summary judgment. *See Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court having considered the Motion, together with the record, finds the undisputable facts as follows:

Debtor filed for relief under Chapter 11, of Title 11, of the United States Code (Bankruptcy Code) May 8, 1992. This Adversary Proceeding arose in the context of Debtor/Plaintiff's (Debtor) request for declaratory relief as to the Government's levy upon Debtor's property. A further basis for the complaint is violation of the automatic stay under 11 U.S.C. § 362, and a preference by virtue of 11 U.S.C. § 547, by Defendant. The instant case is based upon Motions for Summary Judgment on a determination Debtor as an alter ego/nominee of Kenneth A. Stoecklin (Stoecklin).

Debtor's brush with the Internal Revenue Service stems from involvement with an admitted tax protestor, Stoecklin. Stoecklin has been assessed for tax deficiencies of more than $330,000. The tax assessments were created during 1988 for tax liabilities during 1978, 1979, 1980, 1981, and 1982. From the time Stoecklin became involved with Debtor to date, he has successfully

gained control, and maintained an indirect interest in Debtor.

Debtor was created as a small real estate investment corporation. A small group of original investors incorporated and purchased a tract of land for the purpose of development and resale.[1] Throughout Debtor's history it has maintained its small form and continues to act as a real estate development corporation.

Debtor employed Stoecklin in 1984 to maintain the corporate books and records. Soon after, in October 1985, Stoecklin's company Kennedy Financial Investment Company (Kennedy) purchased shares of Debtor. On November 14, 1986, Stoecklin was elected a director of Debtor, and on February 13, 1987, he was elected president of Debtor.

Each of the original shareholder's were adequately compensated for redemption or sale of their stock interests in Debtor. The only remaining original investor is Robert Petrelli, a shareholder unrelated to Stoecklin. Debtor redeemed 40 of 100 of Petrelli's stock on March 31, 1991 for $10,000, leaving him a 16.6% shareholder with 60 shares.[2]

Stoecklin purchased shareholder interests of three original shareholders on December 23, 1986. On December 26, 1986, Stoecklin and his wife gave to each of their children, K. Wayne Stoecklin, Joan M. Pflucker, and Kathy L. Crehore, 100 shares of Debtor. From December 26, 1986, Stoecklin has not retained a direct interest in Debtor. On January 2, 1989, Debtor redeemed Kennedy's 100 shares for $10,000. There are no issues with respect to gift tax liability in question in the instant case. On May 14, 1990, Stoecklin's son, K.W. Stoecklin, was made corporate president and treasurer by corporate resolution thereby replacing his father. Stoecklin continued to manage and conduct day-to-day operations of Debtor. Stoecklin, by trade, is a Certified Public Accountant and has practiced accounting since 1957. He originally spent most of his career in southwestern Ohio, and moved to Florida in 1980 due to health problems. Sometime later, Stoecklin entered into an agreement with Debtor to provide management services as well as his other duties. Since then, Debtor has not maintained an office, other than Stoecklin's home, to conduct business affairs. Other than Petrelli's minority position, Stoecklin's children own all the controlling interest in Debtor.

1. Debtor was incorporated as a land development business under the laws of Florida on or about May 17, 1979. At its inception, Debtor had eight hundred (800) shares issued to several investors. An original investor, Robert Petrelli remains a shareholder to date and holds the title of Secretary/Director. There are presently 360 shares outstanding.

2. On June 9, 1979, the Shareholder's Agreement set out the owners of Debtor and their respective share in Debtor. The following table outlines disposition of Debtor's shares:

| Shareholder | Original Shares | Redemption/ Sale Date | Redemption/ Sale Price | Shares Reissued |
|---|---|---|---|---|
| B.D. Taylor | 100 | 12/19/86 | $10,000 | Kennedy Financial— redeemed 1/2/89 |
| T.W. Smith | 100 | 12/23/86* | $15,000 | Kenneth Wayne Stoecklin |
| Waldo T. Bramlett | 100 | 12/23/86* | $15,000 | Joan Pflucker |
| David S. Carr | 100 | 12/11/79 | N/A | Orest and Irene Pichard |
| Liv I. and Charles W.A. Travis, Jr. | 100 | 10/4/85 | N/A | Kennedy Financial— redeemed 3/31/92 for $10,000 |
| Evelyn Smith | 100 | 6/3/87—34 Shares 8/1/88—32 Shares 6/19/89—34 Shares | N/A | Redeemed to Debtor |
| Robert Petrelli | 100 | 3/31/91—40 Shares | $10,000 | Redeemed to Debtor |
| Elmer Eugene Willis | 100 | 12/23/86* | $15,000 | Kathy S. Crehore |

\* These shares were gifted 100 each to Stoecklin's children.

Other relevant facts include: Stoecklin attended all shareholders' and directors' meetings from December 14, 1985; through control of Stoecklin, Debtor made one dividend in the amount of $5.00 per share shortly after Stoecklin's children received an interest in Debtor; charitable contributions have been made to various unrelated organizations not exceeding ten percent of Debtor's taxable income at Stoecklin's choice; Debtor subscribed to several investment publications all used by Stoecklin; Debtor purchased round-trip coach-class airfare for Stoecklin's son, K.W. Stoecklin; and, Debtor made a wire transfer of money to Stoecklin's daughter, Kathy Crehore, in January, 1989.

In addition, Debtor purchased property adjacent to Stoecklin's homestead property, subdivided it, and retained a one half section contiguous to Stoecklin's home. All actions of Debtor appear to be initiated by Stoecklin whether originally approved or subsequently adopted and ratified by Debtor's Board of Directors. In addition, Stoecklin testified the wire transfer was not for Debtor's purpose and that he placed personal funds of his own into the corporate account for the sole design of utilizing the wire transfer technology. Debtor has otherwise followed all corporate formalities as required under Florida law.

The Internal Revenue Service recorded a notice of federal tax lien against Debtor in Citrus County, Florida, on October 1, 1991. On March 11, 1992, Defendant issued a levy against Debtor as nominee of Stoecklin, which precipitated Debtor filing for relief under Chapter 11. There has been no assessment against Debtor nor allegations of tax obligations directly owed by Debtor.

This Court is submitted the question of whether Debtor, in its own fashion, is the nominee of Stoecklin, and therefore liable for Stoecklin's individual tax obligations.

An analysis of the record and Stoecklin's past dealings with the Internal Revenue Service reveals this is not Stoecklin's first endeavor at removing himself from the federal government's tax system. *See Stoecklin v. Comm'r*, 54 T.C.M. 452, 1987 WL 40510 (1987).[3] In 1977, Stoecklin established the Kenneth A. Stoecklin Equity Trust (Trust) and a professional corporation for himself as a certified public accountant. The Trust was created as an irrevocable trust for Stoecklin's children and an unrelated 20% shareholder. The Trust provided for three trustees one of which was unrelated. Stoecklin and his wife transferred certain tangible property and his lifetime services as an accountant to the Trust. Prior litigation ensued when Stoecklin was determined to have tax deficiencies for 1978, 1979, 1980, and 1981. In addition, Stoecklin's professional corporation was claimed to be deficient in taxes for 1981 and 1982. Stoecklin conceded the issue with respect to his professional corporation, but claimed the Trust was a bona fide entity which must be recognized for federal income tax respects, and thereby excluding application of I.R.C. § 671 et seq.[4]

Throughout Stoecklin's tax protestor career, he has been successful at thwarting the Internal Revenue Service's attempts of collection. Stoecklin's pursuit paints the picture of a contest with the Internal Revenue Service. The contest persists as long as Stoecklin can avoid paying taxes, while living in a comfortable home, and receiving a stipend to meet his daily expenses of his existence. Stoecklin's work for the Trust and now the Debtor allows him to do what he is best at; investment research, accounting, and planning for his children's future all without paying income, estate, or gift tax.

**3.** *See also Stoecklin v. United States*, 865 F.2d 1221 (11th Cir.1989) (family trust income attributable to taxpayer); *Stoecklin v. United States*, 943 F.2d 42 (11th Cir.1991) (United States may be named party, but taxpayer could not challenge merits of underlying assessments); *Stoecklin v. United States*, 1992 WL 315548 (M.D.Fla.) (action for wrongful disclosure of tax return information dismissed); *Stoecklin v. Hovland*, 1992 WL 206394 (M.D.Fla.) (complaint for writ of mandamus dismissed); *Stoecklin v. Comm'r*, 54 T.C.M. 860, 1987 WL 48386 (1987) (dismissal of complaint for award of reasonable litigation costs; government position substantially justified).

**4.** Trust Income, Deductions, and Credits Attributable to Grantors and Other Substantial Owners.

In comparison, Stoecklin's design of the trust and utilization of Debtor in the instant case are strikingly similar. Stoecklin's basic strategy is to manage Debtor as in the Trust, with powers such as signing checks, and making all management decisions. Aside from Stoecklin's initiation, the two trustees in the Trust never exercised independent judgment, and were treated as no more than mere nominees. None of Debtor's directors or officers act with independent judgment. Stoecklin makes all the decisions. In addition, the trust provided Stoecklin a salary fixed at 250 silver dollars per month and full benefits including adequate transportation. Debtor's arrangement with Stoecklin is the same except payment is in cash not appreciated silver coins having a lower book value. Stoecklin's Trust was designed to allow him a guaranteed income to meet day-to-day expenses, while affording him the opportunity to avoid payment of taxes and developing an estate plan for his family. Debtor seeks to bring about the same result as the Trust.

There are however, some differences between Debtor and the Trust. During the life of the trust, and until the trust released Stoecklin of his indenture, the trust would commonly purchase silver dollars and deduct the expenses. To make matters more interesting, these coins were paid to Stoecklin and a deduction was taken for their book value. Gain was not recognized on the appreciated value of the coins. This afforded Stoecklin compensation with appreciated market value coins while claiming the lower book value as compensation. Stoecklin lost the book/market value argument when defending his Trust. In the instant case, Stoecklin is not receiving assets subject to gain from Debtor.

The Trust was created with an assignment of all Stoecklin's services as accountant to the trust. The courts found an assignment of income and rejected Stoecklin's argument he had no income to tax. There are no assignment of income issues in the instant case.

As one would imagine, and however clever Stoecklin's Trust design was, the Tax Court saw right through it and found a violation of assignment of income principles which made Stoecklin's objectives too much for the scheme to endure. The court went on to find

the Trust was a "sham" transaction. Stoecklin, as settlor, would be taxed on trust income under I.R.C. § 671 et seq. I.R.C. § 482 applied to reallocate all income, deductions, and credits claimed by the Trust to Stoecklin. The Tax contest however, is far from over. Now before this Court is a similar plan devised by Stoecklin which paradoxically seeks to eliminate the failures of the trust. More specifically, there are no issues with respect to distribution of appreciated assets, assignment of income, and Stoecklin is not the settlor.

While it is true Stoecklin did not form Debtor as he did the equity trust, the two plans have strikingly similar objectives. Stoecklin is still in contest with the Internal Revenue Service having systematically created what his prior trust could not. In looking back at Stoecklin's prior transactions, it is no wonder he had the intuition to reconstitute Debtor in such a manner.

 In general terms, a corporate entity is distinct and respected under a state's corporate laws. See *Moline Properties, Inc. v. Comm'r*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). However, the concept of a corporate entity's separateness from an individual owner can be abused and yield a result contrary to the aim of the law. The inability of the Government to satisfy a delinquent income tax obligation clearly forms a consideration for disregard of the corporate entity. See *G.M. Leasing Corp. v. United States*, 514 F.2d 935 (10th Cir.1975), *rev'd in part on other grounds*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). A party may move to look past a corporate identity by showing nominee status, alter ego, or by piercing the corporate veil. In the instant case, Defendant asserts Debtor is the nominee or alter ego of Stoecklin.

 With respect to disregard of a corporate entity, a federal court must apply the law of that jurisdiction. See *Bendix Home Systems, Inc. v. Hurston Enterprises, Inc.*, 566 F.2d 1039 (5th Cir.1978) (applying Florida law); *Tato Int'l Corp. v. Comm'r*, 1989 WL 104789, 89–2 U.S.T.C. ¶ 9485 (S.D.Fla. 1989) (tax obligations and nominee liability). "Under Florida law, the corporation's sepa-

rate identity will be disregarded if it is a "mere instrumentality" of another individual or another corporation created to mislead or an existence for fraudulent purposes. *Id. Tato,* 1989 WL 104789, at 4. There is no requirement of fraud, only a "mere instrumentality" used to mislead a creditor. *Bendix,* 566 F.2d at 1042. Florida's courts recognize elements such as personally utilizing the assets of the corporation for the payment of personal obligations and investments; failing to maintain either the *de jure* or *de facto* existence of the corporate entity; and generally treating the corporation as a sham. *Bermil Corporation v. Sawyer,* 353 So.2d 579 (Fla. 3rd D.C.A.1978); *Levenstein v. Sapiro,* 279 So.2d 858 (Fla.1973).

■ Defendant cites authority for applying "alter ego" or "nominee" status in Florida and asserts there is little if no difference with respect to the criteria federal law dictates. In *Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725 (11th Cir.1989), the court held Alabama law and federal law were so similar as to the application of "nominee" status, "that the distinction was of little moment." *Id.* at 728. "The issue under either state or federal law depends upon who has 'active' or 'substantial' control." *Id. citing Valley Finance, Inc. v. United States,* 629 F.2d 162, 172 (D.C.Cir.1980), *cert. denied sub nom., Pacific Development, Inc. v. United States,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The court in *Shades Ridge,* named distinct elements of a corporation being a taxpayer's nominee:

(1) the control taxpayer exercises over the nominee and its assets; (2) the use of the corporate funds to pay taxpayer's personal expenses; and (3) the family relationship, if any, between the taxpayer and the corporate officers. [Citations omitted].

*Shades Ridge,* 888 F.2d at 729. This Court finds the federal law and Florida law to be consistent with this view.

■ *Shades Ridge* in no way limits this Court's power to ignore the fiction of separateness in the interests of equity or justice. No uniform standard for determining whether a corporation is an "alter ego" or "nominee" exists, only a reading of the particular factual circumstance in light of a creditor's claim. The gravamen herein is: does the materiality of Stoecklin's efforts cause a jaundiced view of Debtor's existence? Because *Shades Ridge* does not limit a court's power to ignore the fiction of separateness, this Court may ignore the form of Debtor where Debtor is nothing more than a clever scheme predicated on evading payment of assessed taxes. This view is not contrived to pierce the corporate veil or simply disregard its existence, but used where assignment of liabilities is necessary to those who have designed a method to evade liability.

■ From the record, all corporate formalities were observed with some minor twists the Internal Revenue Service may have over emphasized. For example, Debtor paid for Stoecklin's son, K.W. Stoecklin, to attend a corporate meeting which was alleged to be a vacation for Debtor's president. However, K.W. Stoecklin did attend a meeting regardless of the length of such meeting. In addition, there does not appear to be a history of corporate waste, and the costs to accomplish what was suggested to be a corporate purpose were not extravagant or frivolous. The record supports a finding all the corporate formalities were met. However, the fact that Stoecklin caused all the corporate formalities to be observed still does not give credence to his overwhelming control of Debtor. Debtor is passive in nature, 84.4% indirectly controlled and facilitated by Stoecklin.

■ As stated above, the law is well settled with respect to nominee status or the alter ego doctrine. Whether this Court applies *Shades Ridge* or Florida law, a corporation's separate identity will be disregarded if it is found to be a "mere instrumentality" of another individual created to mislead or exists for fraudulent purposes. There is no requirement of fraud per se, even though fraud may satisfy a court's inquiry into a nominee or alter ego grievance. *Bendix,* 566 F.2d at 1042. To determine if Debtor is a mere instrumentality created to mislead Defendant's efforts to collect taxes from Stoecklin, this Court may view the controlling interests of Debtor. It is clear, in the instant case, Stoecklin has devised a plan predicated

upon not paying prior tax obligations. The law does not preclude application of nominee status where one has devised a scheme to avoid payment or collection of taxes in this manner.

Debtor, in substance, is nothing more than a clever and elaborate estate planning scheme employed to avoid the collection of a income tax liability of Stoecklin. Notwithstanding Stoecklin's prior dealings with the Internal Revenue Service, this Court finds Debtor is the nominee of Stoecklin for the reasons set out above.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Plaintiff/Debtor's Motion for Summary Judgment on the issue of nominee status be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that Defendant's Cross Motion for Summary Judgment on the issue of nominee status of Debtor be, and the same is hereby, granted.